1

Mark F. Anderson (SBN 44787)
Anderson, Ogilvie & Brewer LLP
235 Montgomery Street, Suite 914
San Francisco, CA 94104
Telephone: (415) 651-1951
Fax: (415) 500-8300
mark@aoblawyers.com

Attorney for Plaintiffs Douglas K. Polk and Delores Polk

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| Douglas K. Polk and Delores Polk, | ) | Case No. |
| | ) | |
| Plaintiffs, | ) | COMPLAINT |
| | ) | |
| v. | ) | |
| | ) | |
| Capital One Bank (USA), National Association, | ) | Jury Trial Demanded |
| | ) | |
| Defendant. | ) | |
|  ———————————————————— | ) | |

**Preliminary Statement**

1.     This is an action for damages brought by an individual consumers Douglas K. Polk and Delores Polk against defendant Capital One Bank (USA), National Association for violation of the Fair Credit Reporting Act, 15 U.S.C. §1681 *et seq* and the Consumer Credit Reporting Agencies Act, Civil Code § 1785.25(a).

**The Parties**

2.     Plaintiffs Douglas K. Polk and Delores Polk, husband and wife, are individuals who reside in Solano County, California.

3.     Defendant Capital One Bank (USA), National Association is a national bank with its principal place of business in Glen Allen, Virginia ("Capital One").

**Jurisdiction & Venue**

4.     The court has federal question jurisdiction over the FCRA claims pursuant to 15 USC §1681p and supplemental jurisdiction over the state law claims pursuant to 15 USC § 1367.

5.     The alleged violations arose in part in this district, which is where plaintiffs reside.

**Description of the Case**

6.      On November 22, 2006, plaintiffs took delivery of household furniture from Home & Garden Furniture & Design Center, Vacaville, CA for which they charged $2,254.38 on plaintiff Douglas K. Polk's Capital One VISA card.

7.     Upon inspection, plaintiffs noticed that the furniture was damaged to the point it was not merchantable. Plaintiffs refused to sign a release presented by the delivery service saying the furniture was delivered in good condition. Plaintiffs noted on the delivery form that the furniture was damaged.

8.     Plaintiffs immediately informed store owners Debra Kohl and Ray Medina that the furniture was defective. Plaintiffs and Ray Medina discussed various options under which the store might replace the defective furniture, but by February 2007, plaintiffs realized the owners were not proceeding in good faith but instead were stringing plaintiffs along. The store refused to refund the money. The store went out of business in the fall of 2007.

9.     Plaintiffs never used the furniture; after storing it for some months, they donated it to the Salvation Army.

10.     On February 15, 2007, plaintiff Delores Polk obtained instructions on how to dispute the charges and have the charges charged back from a representative in Capital One's dispute department. Based on the instructions, on March 1, 2007, plaintiff Delores Polk sent a 15 page statement of facts concerning the transaction to the dispute department.

11.     On April 27, 2007, Capital One sent plaintiffs a letter that stated it had credited

plaintiff Douglas Polk's VISA account for $2,254.38 and had charged that amount back to the merchant. The letter stated "we consider this case closed," but that if the merchant were to provide additional information within 45 days, we may reopen our investigation relating the disputed charge for a period of twelve months."

12.     On June 13, 2007, Capital One sent plaintiff Douglas Polk a letter that states that since Capital One charged back the amount of the purchase, the merchant provided additional proof the charge was valid and as a result, Capital One re-billed plaintiff's VISA account. The letter added that if plaintiff wished to dispute the resolution, plaintiff may submit a statement in rebuttal.

13.     On June 25, 2007, a Capital One representative told plaintiffs they may submit a rebuttal within 30 days. On July 21, 20007, plaintiffs sent a letter by FEDEX with photos of the damaged furniture to Capital One's dispute department showing that the furniture was defective. Capital One later claimed it never received the letter and photos, but FEDEX tracking shows the delivery was received by Capital One's dispute department.

14.     Capital One sent plaintiffs monthly statements beginning in December 2006 through July 2007 that called for minimum payments to be due of about $65. Plaintiffs made each of the payments by the due date.

15.     The Capital One statement that covered the period June 20, 2007 to July 19, 2007, stated that the minimum balance was zero. In succeeding months ending with the statement that covered December 20, 2007, to January 19, 2008, each if the statements said the minimum payment was zero. After receiving that statement for the period ending on January 19, 2008, Capital One did not send plaintiffs any additional statements.

16.     On December 17, 2007, plaintiff Delores Polk faxed a letter to Capital One's dispute department asking about the status of the account. A Capital One representative named Jeremy called back to say the account was still under investigation.

17.     Not having received any communication from Capital One since December 2007, in March 2008 and from time to time to the end of 2008, plaintiff Delores Polk called Capital One only to be told the matter was under investigation.

18.     From January 2008 to February 2013, plaintiffs did not receive any communications from Capital One or anyone concerning the account; plaintiffs reasonably assumed the matter was closed. However, in February 2013, plaintiffs received a voice mail from a Capital One representative named Douglas who said the account was delinquent. Plaintiff Delores Polk called Douglas back the next day and asked him about the account; he told her the account was delinquent.

19.     On May 1, 2013, Citibank sent plaintiff Douglas Polk a notice that it had decreased the credit limit on his Citi Thank You credit card to $7,760, which was the balance on the card. The letter stated Citibank based its decision on a review of plaintiff Douglas Polk's Experian credit report.

20.     Upon checking his credit reports on or about May 1, 2013, plaintiff Douglas Polk learned for the first time that Capital One had been reporting to the following negative information to the three national credit reporting agencies (the "CRAs"):

- That the Capital One account had been in good standing from October 2007 through February 2013, which made it appear plaintiff Douglas Polk had been making payments on the account when in fact he had not been making any payments because Capital One had told plaintiffs no payments were due;

- That plaintiff Douglas Polk had been 30 days late in paying on the account in March 2013, 60 days late in April 2013, 90 days late in May 2013, and 120 days late in June and July 2013; none of these reports were accurate because Capital One had told plaintiffs no payments were due;

- That Capital One had charged off the account beginning in August 2013 ("C/O"),

and

- That the unpaid balance of $2,716 had been charged off.

21.     Capital One's reports to the CRAs concerning plaintiffs' payment history were not accurate. Plaintiffs had made no payments from October 2007 through February 2013 because no payments were due and plaintiffs were not 30, 60, 90 and 120 days late in making payments on the account.

22.     Capital One's report to the CRAs that the account had been charged off was misleading because Capital One had informed plaintiffs no payments were due. Had Capital One informed plaintiffs that payments were due, plaintiffs would have made the payments and Capital One would not have charged off the account.

23.     On September 10, 2013, plaintiffs received a call from Nelson & Kennard, a collection law firm, concerning the account. Plaintiff Delores Polk told a representative of the firm about the history of the account explaining why they were not responsible to pay the debt. On September 20, 2013, plaintiff sent a dispute letter to the law firm. A law firm representative told plaintiff Delores Polk that had sent the claim back to Capital One since it was a "closed case."

24.     Plaintiffs were been denied a home loan on January 28, 2014, due to Capital One's inaccurate credit reporting. On January 29, 2014, plaintiff Delores Polk talked to Michelle in Capital One's dispute department about Capital One's reports to the credit bureaus that had caused them to lose the home loan. Michelle promised to ask the CRAs to delete Capital One's reports once she received a letter from plaintiffs. On January 31, 2014, plaintiffs sent a letter with supporting documentation by FEDEX to Michelle in Capital One's dispute department, concerning the account and the effect its reports to the CRAs was having on their ability to buy a house. Michelle broke her promise; Capital One did not delete its negative reports to the CRAs.

25.     On March 21, 2014, plaintiffs received a letter from Capital One that states its

research had found no evidence of fraud on the account and as a result, it made no adjustments to the account. Plaintiffs never alleged fraud on the account; the letter was not responsive to plaintiffs' dispute. After receiving the letter, plaintiffs continued to call Capital One seeking to resolve the matter, but Capital One's only response was to say it had already investigated the matter.

26. On May 21, 2014, plaintiffs sent a dispute letter to CoreLogic, a reseller of credit reports, which forwarded the dispute letter to the CRAs, which in turn in the ordinary course of business sent the dispute letters to Capital One. On June 11, 2014, CoreLogic sent plaintiffs the result of its investigation, which were that Capital One had verified that its credit reporting was correct.

27. On August 9, 2014, plaintiffs sent dispute letters to the CRAs asking those entities to conduct an investigation into Capital One's reports that plaintiffs were past due on the account and that they owed the amount charged on the account.

28. Upon receipt of the dispute letters, the CRAs sent automated consumer dispute verification requests to Capital One asking it to investigate the dispute. Upon receipt of the requests, Capital One was obligated to conduct a reasonable investigation as to its credit reporting on the account. However, Capital One failed and refused to conduct a reasonable investigation and instead merely arbitrarily verified its reporting as correct

29. Capital One willfully, intentionally, recklessly and negligently repeatedly failed to follow procedures to correct the inaccurate, misleading and incomplete credit information.

30. As a result of defendants' conduct, plaintiffs have suffered actual damages in the form of (a) inability to obtain mortgage loans, b) being forced to pay an inflated interest rate on a car loan, c) harm to their credit reputation and credit scores, and (c) emotional distress in the form of mental pain, anguish, humiliation, embarrassment, anxiety and frustration. Plaintiffs will continue to suffer damages for an indefinite time in the future.

31.     Defendant Capital One is a subscriber to the three CRAs. As such, at least once a month, Capital One electronically transmits its customers' account information to CRAs. Each such transmission includes changes, additions and deletions of customers' account information.

32.     Plaintiffs' account history was included in each of Capital One's monthly transmissions of information to the CRAs.

33.     Each time plaintiffs sent a dispute letter to the CRAs, the CRA contacted Capital One by electronically sending it an Automatic Consumer Dispute Verification (ACDV). The ACDV notified Capital One that plaintiffs were disputing its credit reporting on the account.

34.     Upon receipt of each ACDV, Capital One was required to conduct a reasonable investigation of the dispute and to then report back to the CRA the results of its investigation. The CRA in turn reported the results to plaintiffs.

35.     Each time Capital One responded to a ACDV from a CRA it included the inaccurate, incomplete and misleading reports set forth in ¶ 20 of this complaint.

36.     When Capital One transmitted the loan account information, it knew that the CRAs would sell the credit information to anyone who had a permissible purpose to obtain the credit information and who was willing to pay the CRAs fees. Such persons include banks, finance companies and other creditors.

37.     Potential credit grantors that were considering extending credit to plaintiffs sought and obtained plaintiffs' credit reports from one or more of the CRAs.

38.     During the two years preceding the filing of the complaint in this action, various credit grantors obtained plaintiffs' credit reports, which included Capital One's negative reports.

39.     For example, Capital One provided plaintiffs' Trans Union's credit reports to Wells Fargo on January 16, 2014 and to Fannie Mae on November 18, 2013.

40.     Each time a CRA sold a copy of plaintiffs' credit reports to a potential credit grantor,

plaintiffs were damaged. Each such sale was a separate publication of Capital One's inaccurate, incomplete and misleading credit reports.

41.     Credit scores are used by credit grantors to decide whether to extend credit. The credit scores are primarily based on the contents of consumer's credit reports as published by the CRAs.

42.     Each transmission by Capital One of a negative credit to a CRA and each publication of plaintiffs' credit reports by a CRA to a credit grantor was a violation of Civil Code § 1785.25(a) and the FCRA.

**First Claim: Violation of the Fair Credit Reporting Act, 15 USC § 1681s-2(b) – Against Defendant Capital One, Inc.**

43. Plaintiffs incorporate by reference ¶¶ 1-42.

44. The FCRA requires a furnisher such as Capital One after receiving notice from a credit reporting agency that a consumer disputes information that is being reported by a furnisher, to conduct an investigation with respect to the disputed information, to review all relevant information, to report the results of the investigation to the credit reporting agency, and, if the investigation reveals that the information is incomplete or inaccurate, to report those results to all other credit reporting agencies to which the furnisher has provided the inaccurate information.

45.     Within the last two years, defendant Capital One provided inaccurate, misleading and incomplete information to the defendant credit bureaus.

46.     Capital One violated sections 1681n and 1681o by engaging in the following conduct that violates 15 U.S.C. § 1681s-2(b):

(a)     willfully and negligently failing to conduct a reasonable investigation of the inaccurate information that plaintiffs disputed;

(b)     willfully and negligently failed to review all relevant information concerning plaintiffs' accounts;

(c)     willfully and negligently failing to report the results of investigations to the CRAs;

(d)     willfully and negligently failing to report the inaccurate status of the inaccurate information to the CRAs;

(e)     willfully and negligently failing to properly participate, investigate and comply with the reinvestigations that were conducted by the CRAs concerning the inaccurate information disputed by plaintiffs;

(f)     willfully and negligently continuing to furnish and disseminate inaccurate and derogatory credit, account and other information concerning plaintiffs' accounts to the credit reporting agencies;

(g)     willfully and negligently reporting an alleged that was over seven years old from the date Capital One first alleged the account was delinquent, when in fact it was never delinquent, in violation of 15 USC § 1681c (a) (2);

(h)     willfully and negligently failing to comply with the requirements imposed on furnishers of information pursuant to 15 USC § 1681s-s(b); and

47.     As a result of the above-described violations of § 1681s-2(b), plaintiffs have been damaged.

**Second Claim: Violations of the California Consumer Credit Reporting Agencies Act, California Civil Code §§ 1785.25 (a) – Against Capital One**

48.     Plaintiffs incorporate by reference ¶¶ 1-47.

49.     California Civil Code § 1785.25 (a) states that a "person shall not furnish information on a specific transaction or experience to any consumer credit reporting agency if the person knows or should know the information is incomplete or inaccurate."

50.     Capital One negligently and willfully furnished information to the CRAs that it knew or should have known was inaccurate, misleading, and incomplete.

51.     Capital One failed to conduct a reasonable investigation as to whether its credit reporting was accurate, misleading or incomplete.

52.     Based on these violations of Civil Code § 1785.25 (a), plaintiffs are entitled to the remedies afforded by Civil Code § 1785.31, including actual damages, attorney's fees, compensation for pain and suffering, injunctive relief, and punitive damages in an amount not less than $100 nor more than $5,000, for each violation as the Court deems proper.

## PRAYER FOR RELIEF

WHEREFORE, plaintiffs pray for judgment as follows, as applicable to each claim:

On the First Claim: Violations of the Fair Credit Reporting Act, 15 USC § 1681s-2(b),

   a)  Actual, statutory and punitive damages;

   b)  Costs and attorney's fees; and

   c)  For any other relief that the court deems just and proper.

On the Second Claim: Violations of the California Consumer Credit Reporting Agencies Act, California Civil Code §§ 1785.25(a),

   d)  Actual, statutory and punitive damages;

   e)  Injunctive relief; and

   f)  Costs and attorney's fees; and

   g)  For any other relief that the court deems just and proper.

Dated: April 22, 2015.

ANDERSON, OGILVIE & BREWER LLP

By   */s/ Mark F. Anderson*
Mark F. Anderson
Attorney for Plaintiffs

DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury on all issues.

Dated: April 22, 2015.

ANDERSON, OGILVIE & BREWER LLP

By   */s/ Mark F. Anderson*
Mark F. Anderson
Attorney for Plaintiffs